Mr. Anderson, pleased to hear from you. Good morning, Your Honors. May it please the Court, my name is William Anderson. I represent the Baltimore City Substance Abuse Directorate. We're going to talk this morning primarily about the larger facilities involved in this case, those of 17 and more, because that's where most of the harm is occurring in this situation. I'll save my argument for the smaller facilities for the briefs unless the Court has questions. We have three issues we've raised with the Court's ruling regarding how these programs can locate in the City of Baltimore, and I want to start with community approval. That is the most serious issue because of the impact it has on these programs, and let me explain the problem. If a program director wants to locate or expand a new facility, they have to start with a City Council member, but the City Council member then presents them with what I would call a Wizard of Oz situation. Go get the approval of the community associations where you want to locate, and we'll give you a bill. Dorothy succeeded, but these people often don't. The community associations actually have the right to stop the program from locating under the City's system. They can say no, and we have six instances in the record where, in fact, they did say no, and programs could not expand or locate because the community said you can't come here. That's not in the ordinance. I'm sorry? It's not in the ordinance. It's not in the ordinance. That's correct. This is an unwritten policy. It's an unwritten practice of the City. Would you have any proof of that? Proof of the policy or the practice? That you have to have community approval? Yes. It is in the practice itself. We have instances where 10 different City Council members require that in every instance. We have the answer to a request for admission. They may have been pandering to the crowd by saying we're not going to approve this unless the community agrees. I was on a zoning board in Virginia, and people would say that all the time to the people in the audience just to placate them. But there's no proof that there's an actual requirement that has been imposed by the body making the decision. It's not in this record. There is evidence of a consistent practice of requiring that. If you're asking is there a written requirement somewhere, there is not. It's an unwritten practice. The thread running throughout your argument seems to be that there's something tainted and something wrong about having public input into these situations. I don't understand why that is so. When I was a journalist, I went to some of these zoning board hearings, and there was public input all the time. It was the essence of the zoning process, and it made sense to me because it was their neighborhood and it was their property. Why shouldn't they? Why shouldn't either a zoning authority or a planning commission or a city council or what have you get public input? I mean, that's what democracy is all about. Man, this is the feature. These zoning hearings are the feature that de Tocqueville said. There are two problems with that. You know, you read de Tocqueville's, man, this is the town hall meeting stuff. I mean, this is democracy at its most fundamental. Public input is not forbidden by the law, but the community ability to veto a program is forbidden by the law, and that's what the city has done. But there's no evidence in this record that the deliberative body was vetoing a law based on the lack of community approval. There may be isolated random comments, but that happens all the time when they're trying to calm down a group. Well, Your Honor, we have testimony from the program directors who repeatedly said they were told they had to get written community approval before the bill would even be introduced. There's no contrary testimony. We have the city writing, agreeing to a request for admission that no program has ever been located since 2000 without getting express community approval. We have the city solicitor. Well, maybe so. I mean, if that is a matter of practice, turns out to be the case. You know, there's just something that bothers me that says a decision is tainted if the members of the city council or whatever listen to the concerns of their constituents, and that, you know, that's what I don't get because that seems to me what they were elected to do. The second reason, the second problem with that that I did not get to is it's being applied in a discriminatory fashion. Right, but isn't this a facial challenge? This is a facial challenge, yeah. Exactly. And you're arguing as applied. No, I'm arguing facial challenge because it is only being applied. Something about the ordinance itself that requires it. So how do you then go on this, you know, as I see it, kind of a sojourn to saying what's done in practice because that's not really the issue under your pleadings, is it? Well, the conditional use ordinance, it starts with the city council member. The city council member in every single instance with no exception has put this barrier up of community approval. It's a separate practice than the ordinance, but it's absolutely tied in with it. And the problem is, Your Honor, they don't do that for other types of residences. If I want to put up a 20-person apartment building... They have the input on zoning variances and permits all the time. But they never tell them to go to the community and bring me back approval for your apartment building. They don't say bring me back approval for your juvenile home. They don't say bring me back approval for a home for a Spanish. Why is your facility like this? It's a residence. It is primarily a residence. There is a treatment component. But the reason these facilities exist is because these people can't live anywhere else. They would go back into recidivism. They would go back to drug use. If you presented your case, it was your burden to show the discriminatory aspect of it. I understand the way you presented your case. It was that the city treats differently the facilities that we think are our comparator, a residence, from other facilities. But I'm not sure you ever carried your burden of proof there, which, once you cut through the district court's opinion, may have been what it was trying to say. Because it seems like to me you have a very tough time in a facial challenge saying that an apartment building and these facilities are the same thing. Because apartment buildings do not require supervision 24 hours a day for the folks that live there. They don't have a significant portion of the individuals who are there committed by a drug court, a number of those folks being unable to leave the property. You don't have the impact of, in typical zoning terms, all the traffic that comes with the medical component and all the supervisory personnel that have to be there. It seems like to me that in the way you chose to present your case, when you went with the comparators, you don't have a comparator. You have the other ones that the city pointed out. There is no perfect comparator in this case, and I doubt there is in any Fair Housing Act case, because you're always looking at something similar, not the same. The residence is the right comparator, we believe, because the case law repeatedly says that you need to protect the right of the disabled to live where they choose. And they can choose to live with other disabled people if they want. Well, the CO requirement is in place, isn't it, for nursing homes and community correction centers? It is. And our position is that it's also illegal in nursing homes. How would it be discriminatory if you have the CO requirement, let's say, for a nursing home, which I think would raise far fewer concerns with respect to community safety than this particular program? Because a nursing home is also protected by the Fair Housing Act, but the Hobson's case and two or three others we have cited have said you can't discriminate against them either. This is what you call the catch-in-the-net problem in the case law. If an ordinance is discriminatory on its face, as this one is, it singles out people in residential treatment. That's all it attaches to. And yet the ordinance brings into it other programs. Can you compare people, though, who have a different disability? Is this a valid analysis to employ when you're selecting your comparator evidence? The disability of a drug addict is totally different from somebody who's old and infirm. And it seems to me, or somebody who perhaps has Down syndrome, are these valid comparators when they aren't suffering from the same disability? They can be, and we have made a comparison here. Give me some legal authority to show that these are valid comparators when they are not suffering from the same or a related disability. I'd have to think through the case law to see if I can come up with all this, but the Fair Housing Act doesn't distinguish between the forms of disability. With the one exception that for persons in recovery, they can't be in current drug use. Other than that, they're all treated the same. And I don't know of any distinction in the law. So you're saying any kind of disability doesn't matter, they're a comparator just because they're disabled. That doesn't seem to make sense. Well, it doesn't in another sense. That's why I keep coming back to residents. People who are disabled need to be able to choose where to live the same way people who are not disabled do, the same way apartment buildings locate, the same way multifamily dwellings locate. They need to have the same choice. What percentage of your residents are convicted felons? Less than 20 percent. It's in our reply brief. It's less than 6 percent come from the drug court and another 14 are on probation. Eight out of 10 of those programs. Okay. What if they have convictions for felonies or were charged with felonies and were convicted of a felony offense? It's possible some may have had that in some other context but not from the drug court. So not related to their rehabilitation. That doesn't matter. The issue is how many of them are convicted felons because that would affect whether they're a valid comparator with some of these other people. The nursing homes, the little old ladies are generally not convicted felons. And that makes a big difference. And I just know from my experience in sentencing people that you don't waste resources like this on people who are not convicted felons. You go to the needy aspects of the population to find the people who would be best served, and the potheads who smoke an occasional joint don't find themselves in these kinds of facilities. The people who find themselves in these facilities are almost uniformly people who have been convicted of felonies. They're the people who need help. The facts on the record say that eight out of 10 are self-referred. They refer themselves, their doctors refer them, their schools refer them. That begs the question if they're trying to do it to escape a probation violation, if they're trying to do it because they've been charged with another distribution offense. See, that doesn't answer the question, and that's what I'm trying to grapple with. Does it help any to understand that these are not prisons? The community correctional facility is a prison. No, I understand that. There's a guard standing at the door. They can't leave. They'd be arrested. These are not prisons. They're residences. They're people who are trying to recover. I can't speak for the panel. It seems like to me the point there goes back, as I look at it, to the burden of proof. It was your burden to show this similarity of comparators, and you've picked residences, apartments, and from the examples we've given you, you don't seem to have come very close to showing that that's an appropriate comparator. Let me respond to the burden of proof. I don't think that's quite right, although I can't cite authority. Under Title VII and Title II, we have the burden of proof of showing that there's a facial discrimination here. I think we have done that by saying they singled out a group that is a protected group, and they are treating them differently than other residences. That's what the case law says. We met our burden of proof. From there, it shifts to the city to come up with some justification, and I see this alternative comparator of the community correction facility as their burden of proof. If they think it's not residences, as all the case law says it needs to be, then they have to come up with some reason why we're not going to look at residences. I would argue that that's a different burden. The case law almost uniformly goes to instances where the particular municipal ordinance, or I guess it could be the state statutes, takes the disabled facility and imposes additional special requirements on them that it doesn't impose on anybody else, and that's not the case here. Well, the additional requirement here is that they have to go through the seal process and they have to get community approval. No apartment needs to do that. No home for juvenile. I agree with my colleague's earlier comment that nursing homes and these sorts of facilities are not comparable. But even if they were, how would that help you? Because the nursing homes are subject to the conditional ordinance approval just as these facilities are. I mean, I don't know that you can even... I find it very difficult to approach this case through comparators at all. I don't think these facilities, which treat those with addictions, are comparable to facilities for the mentally ill who have not been convicted of felonies. I don't think that that's a comparator. You said, well, the mentally ill is a proper comparator, but there are many mentally ill persons that have never been close to be convicted of a felony, so I don't even think your proposed comparator is a comparator. And I don't know how we can go at this case through comparators at all because each of these facilities presents what a kind of unique concerns, which it seems to me the zoning, it's the whole purpose of the zoning process to take up applications based on a totality of the circumstances. And the final thought that I had here, Mr. Anderson, was that it wasn't all that difficult for you to locate under this facility, under this ordinance if you conformed with the basic family dwelling provision, which is that you just limit the number of unrelated persons in a particular unit to four. And there are other instances even where you had more than four unrelated persons where it seemed to me a reasonable accommodation under the statute might be open to you. And some of these larger facilities where the most resistance, I think, is met under the conditional ordinance program, at least the record indicated to me that some of the larger facilities contained as many as 120, 160 residents. And so when we talk about reasonable accommodation, why wouldn't that go two ways? Why can't you reconfigure your proposal and downsize it a little bit to the point where you're having a much smaller number of people and not seeking to locate 150 residents, an unknown number of which are convicted felons, you might find a little bit more receptivity if these were much smaller proposals. It didn't strike me that this was a draconian ordinance because there were at least three ways to comply. Taking the family dwelling provision seriously, seeking a reasonable accommodation, reconfiguring your proposal, downsizing it.  But here you have this facial challenge trying to knock the whole thing out. It just seems to me to be way overextended. My time is up. May I respond to that, though? I have a few thoughts. Do you understand that you might have a better chance of getting away if you showed a little flexibility on your end? My first response is the city has forbidden larger facilities to seek a reasonable accommodation. They have to go through the CL process. That's not an option. The multifamily dwelling unit option has a real serious catch to it. You have to have a bathroom and kitchen in every four-person dwelling unit. That's the definition. That's fine. That's how you can define it. But these facilities often can't do that. If they buy a former nursing home, they're stuck. They'd have to go back and rebuild the thing to put a bathroom and kitchen in every unit. They have to go through the CL process. Now think for a minute about what that means. If we do what you say and we make the thing conform to the four-person bathroom-kitchen rule, suddenly we're not compared to a community correctional facility anymore. Those can go in anywhere as of right. That's the court's ruling. We're also not a safety problem anymore. Those go in as of right. The city doesn't care. It's a pretext. The real reason for doing this is to have a mechanism to let the communities and approval or input is fine. So you're saying the zoning code that has the bathroom facility, four-person, that's in there as a pretext to stop you from locating it? Using it against the residential programs would be a pretext. It's a bathroom-kitchen rule. That's a fundamental requirement in just about every zoning ordinance in the entire country. Yes, I know that. But there is also a reasonable accommodation to those kinds of rules, and that's where reasonable accommodation should be available for these facilities. But they won't allow a residential treatment program to seek a reasonable accommodation under the current provision. It has to go through the CO process and community approval if it can't meet the bathroom-kitchen requirement. Yes, over 16, that's right. So those options are not very viable. Often these facilities need communal kitchens because they don't want people hiding in their rooms. It's not good for a recovering addict to be sitting there cooking their own food and not communicating. They teach them to cook. They teach them to work with other people, to live like a family. It's important to do that. But they can't get a reasonable accommodation today. If they need to do that with a facility, they're headed right for the CO process, and it's the only option they have today. I know it sounds like we're asking for a lot. It's really not. Strike the ordinance that applies the CO process to the residential treatment programs, and we're back to a process where the city, if we need this reasonable accommodation, can look and make sure there's not too much density, there's not too many people in the building. That's what the city should care about. The city should not care that you have a program that's trying to treat recovering alcoholics in a neighborhood where it's properly sized for that neighborhood. All right, thank you, sir. Thank you. You have some rebuttal time too, I think, so we'll wait on that. Mr. Nadin, we're ready to hear from you. Thank you, Your Honor. Matthew Nadin on behalf of the mayor and city council of Baltimore. Are you taking a cross appeal here? We are, Your Honor. Why? I mean, it seemed to me you kind of got pretty much everything from Judge Motz's ruling. What are you taking a cross appeal here? It is true that Judge Motz ordered us in his initial summary judgment decision to essentially codify our existing practice, but he did so based upon a finding that the city's zoning code was facially defective under the fair housing laws. And in the process of that order, he made various statements as to what the new law should say, and we amended it. Isn't that like paying a judgment and then appealing the case? No. At the time, he advised both parties, all the parties, that we would proceed with this process, but rights to appeal were not being waived by going through the process. But we're now in a position. What's left to appeal? We're now in a position. The city, and this is in the record and was discussed at the summary judgment hearing, is in the process of a complete revision of its zoning code. And Judge Motz asked me whether that was going to be accomplished in the near future or did he need to give direction based on whatever his decision would be. So he directed us to make this amendment now because the revision won't be done for a year, two years, who knows. And the amendment goes for the 16 person and smaller. The amendment that we just adopted. Right, that complied with his order. Clarified that drug treatment facilities, licensed or unlicensed, called supportive housing, are entitled to, by right, are permitted to locate just like any other residence. So an apartment building with 32 units was historically in the record and is under the clarified amendment permitted by right, just like anybody else. So there's no distinction, there's no differential treatment between drug treatment facilities and ordinary multifamily dwellings or single family dwellings. They all have to abide by the same rules as Mr. You're getting to tell us what the cross appeal is about. You still haven't answered my question. What is left to appeal? Well, what I'm saying is in the revision of the code, we are definitely going to be dealing with all sorts, all of the different sorts of congregate living facilities and probably put them together, at least that's the proposal. So nursing homes, rest homes, convalescent homes, licensed facilities, all of those are going to be given new treatment. But as it stands now, that will all have to be done under the restriction of trying to interpret the district court's decision saying your existing practice, codify that, which was based upon a finding that our law was facially defective, which was an error. And we should not be under the imposition of that kind of look to the court order to see how you can revise the code when there was no legal basis for ordering us to do so. In addition, if our cross appeal is not granted, then we will return for a petition for attorney's fees, which if we are correct that it should not have been found that our code was facially invalid, but we should not be subjected to a petition for attorney's fees because there would be no prevailing party. Is the issue that you've just been talking about, is it even ripe until the revision has been completed? The issue of how we would do the revision and whether the order applies to it? Yeah, I mean it may be that Judge Motz's ruling really poses no obstacle to you at all in your revision of the ruling. Well, I understand that that may be. I just wonder whether the matter is before us, whether it's even ripe at this point, because it's all sort of speculative about how the way you want to revise it and whether Judge Motz's ruling is. Well, it's ripe for you because his order that our code was facially defective was in error. So anything that flowed from that order was, I'm sorry. But he entered judgment in the city's favor. After he directed us to amend this law. Based on the amended code, and then you went ahead and amended it. We did, but we objected to it. Why is that any different from just paying a judgment and then trying to say the judgment shouldn't have been entered? Because now we're limited by whatever is in his ruling, and there was no basis for limiting the legislature in that fashion. It creates essentially a judicial directive as to how the city council can act in the future, which should never have occurred. Well, I mean, Judge Keenan's suggesting it might be a little bit moot once you've complied. I'm thinking it might not be right, but I think both of those comments are sort of aimed at the same thing, which is, you know, is this really before us now in the form of something that's other than just an advisory opinion? But you would not be deciding whether our future revisions are right or wrong. You would simply be deciding that they ought not be shackled by the order of the district court. But Judge Motz ordered that you be given a 60-day period to amend the code without a court order. He was very particular that he thought that principles of, you know, federalism, judicial restraint, whatever, made it appropriate for you to get that 60-day period in which you could do this of your own accord. The city elected to do it. The court didn't impose it as an order. It didn't say you have to do it. Well, he did. He said, if you don't do it, I'm going to issue an order. Well, yeah, and then you could have appealed that, couldn't you? Well, he said we could. That's what I'm telling you. Yeah, but what I'm saying is when you elect to do what he finds defective rather than wait for him to order you to do it, why haven't you then conceded the issue? Because we reserve the right to be able to modify that statute in the future. And let me just say that you don't think it's completely hypothetical. As I said, right now a 100-unit apartment building can be constructed following the rules for multifamily dwellings with individual units and could hold 400 people recovering from addiction. Now, that might be a great thing, but it's certainly something that might reasonably and lawfully be considered in some sort of public zoning process. But as it stands now, while that had been our practice, although we'd not seen such a large facility, we are now under a court order that says that will be your law. That's something that the city might want to put a limit on. And if we did, we would have the parties from these lawsuits suing us in federal court saying you're disobeying Judge Motz's order. I was under the impression, perhaps wrongly, that the amendments to your ordinance only affected the smaller facilities, not the larger ones. That's not true. Not true. The law makes it clear that wherever, whatever size, sorry. Your new ordinance. Correct. And that was based on the fact that in every occasion, when the question had come up, the city had consistently permitted facilities that operated, configured as in units, they were permitted just like any other place. Now that doesn't mean an apartment building would be allowed in a single-family dwelling neighborhood. What in the opinion said that you were required to do that for facilities of more than 16 people? The opinion said continue your practice, which is what, and that was discussed in the hearing, but there is in the record in the, I believe the seventh appendix volume, is the series of correspondence with the court afterwards where it was made clear by the court that the permissions for treating these facilities the same at numbers, whatever the number was that's permitted for an ordinary apartment building, would be required. Is the question before us, and I'm trying to get a grip because a lot of this is vague, is the only question that's before us on the direct appeal, leaving the cross appeal to one side, is whether there's a facial challenge to the requirement of conditional ordinance approval for those with facilities, larger facilities with 17 or more persons. That's what's before us, isn't it? No, the facial challenge was to strike the conditional ordinance as to any size requirement as to any size facility and replace it, and this is a crucial aspect of what the appellant is seeking. In addition, the court affirmatively mandate that drug treatment facilities be permitted wherever ordinary dwellings and multifamily dwellings are permitted in similar numbers with the exclusion under all the same rules of size except they want an affirmative exclusion from the requirement that they abide by the family dwelling unit definitions, which are the definition of a multifamily dwelling in virtually every jurisdiction in the country. So essentially they're saying treat us like a multifamily dwelling. Are facilities which purport to hold, let's say, five residents, are they subject to the conditional ordinance? They would be except for the fact that they have consistently, and it's undisputed, been granted reasonable accommodations. But does a small facility which conforms to the family dwelling provision, are they permitted to locate as of right? Yes, they are. So there is no difference in the treatment of non-disabled residents, ordinary. They're permitted to locate as of right without a conditional ordinance? Correct. So then the challenge really is to the requirement of a conditional ordinance with facilities of 17 or more? Well, the directorate is saying the smaller and the larger are permitted if they are configured in units. Are what? No matter what size building you have, if it is configured in units of no more than four unrelated people with a separate kitchen and bath in each unit, then you are permitted wherever those kinds of multifamily dwellings are permitted, under the existing law and under the prior practice. Then you're without the need for a conditional ordinance? Correct. All right. What actually triggers the requirement of a conditional ordinance? A request that a number of people greater than four wants to occupy a unit as a drug treatment facility, or for any other reason. So are you saying that a unit of 90, a facility with 90 persons, would have the right to locate as of right as long as they complied with the family dwelling provision of four to a unit with each unit having a kitchen and a bath? Yes, assuming that building is in a district which would permit an apartment building of that size. If it was in a non-single family dwelling. And there are different sized buildings allowed in different districts. I understand, but it would be in a, you would treat it in accord with the application of, the only thing that requires the different treatment is a situation regardless of size where the facility doesn't want to conform to the family dwelling unit provisions. Correct. So it's not the size, it's not the size of the facility as a whole that invokes the conditional ordinance requirement. It is rather the size of the units. Is that right? Have I got that right? It's whether they conform to the family dwelling provisions of the zoning code that triggers the requirement. Not the overall size, not the overall number of persons in a facility, but the question of whether you have no more than four to a unit and a separate kitchen and bath for each unit. My time is up. No, no, I need to kind of get this straight because there are a lot of moving parts here. Yes, your honor, that is correct. Although it's important to point out that the unit dwelling rules originally came into existence decades ago to deal with the problem of overcrowded tenements, among other reasons. So theoretically the number of people might be more, but yes, the answer to your question is in terms of permission to obtain zoning, no matter the number of people, if you abide by the unit dwelling number and kitchen and bathroom requirements for the size building that's permitted in that district, you're permitted by right, whether you're a substance abuse facility or any other group. It's only nonconformity with the family dwelling provisions that invokes the conditional ordinance requirement. Yes. Okay. Because I need to get my... And so the overall number of residents in a facility, are you telling me that it's irrelevant for purposes of the conditional ordinance? No, the reason it's relevant is that a request by a facility of 8 or 12 or 16 persons to be accommodated as similar to a family dwelling has been consistently, without fail, granted. So there is no conditional ordinance required because they receive within approximately 30 days a grant of their request for accommodation to allow them to have more than four people. So they take it in as a result of a reasonable accommodation even if they're not in conformity with some of the other zoning ordinances. Like let's say there's a zoning ordinance against a duplex and if you had a duplex here with... or two-unit facilities and they conform with the family dwelling rules, you would, as a matter of reasonable accommodation, let them in? Well, if there's a duplex in existence but duplexes are not allowed in that zone, then it would be presumably a non-conforming use, permitted as a non-conforming use, but then they would be permitted without asking by right to have four in each unit of the duplex and then if they requested to have 8 or 10, assuming that there was enough space for this number of people, they asked for 8 or 10 in each unit of the duplex, they would be granted those accommodations. They would? Yes, they would. Even if... you mean only smaller facilities? Well, we have not had a case where a request was made for so many people that the bounds of the federal requirements that the accommodation be reasonable and necessary that those bounds have been reached. But if someone asked to put 32 people in a single family dwelling, I imagine that that request might be denied. But we have not had that request. There has not been, there's no evidence of a denial. It's still not entirely clear to me, and maybe my colleagues have a better understanding than I do of it, it's still not entirely clear to me as how the family dwelling unit rules and the reasonable accommodation rules and the overall size of the facility and everything, all of these moving parts, I don't mean, you know, I may have just been missing something, but it's not clear to me how all of these moving parts interrelate, okay? And I'm not sure that your brief makes it completely clear, so it would help me if, subject to the response, okay, to just in a three-page supplemental submission, that's something I need, you may think you've covered it in your brief, but I'm not sure you have, go through just step-by-step exactly how this stuff works, okay? But just tell me, and I have it within seven days, just a description so that I'm sure that we get our facts right about how these ordinances work, when reasonable accommodations set in, what conditions actually lead to reasonable accommodations, when the conditional ordinance is required, the conditional ordinance is required, and when it's not, what relevance does the overall size of the unit play with respect to zoning requirements? I just want, within a week, and you can make it three to five pages, I want you to just set down, just as a very good, clear piece of descriptive writing, how this scheme works, okay? Yes, sir? Yeah. We may need more than three to five pages, and it would at least help me, maybe I'm just the most confused of all, very much helpful to know what Judge Wilkinson's just outlined, but based on that delineation, it would help me to know of these different spots you get to in the zoning progression, what's on appeal and what's not. Yeah. Because I'm not really, I don't understand what your appeal is, and it would be helpful, and I'm not, there's no argument to be included in this, we just wanted the script around it. The opposing counsel may say, well, no, that's not on appeal. But we need to know exactly how the thing works, but we know, okay, of this section, this is not on the appeal, but this section is. Does that make some sense? Yes, and I will include that. And then if you could also specify the significance of 17 or more people, because reading through your briefs, I took 17 or more, and its significance to me that you impose the CO requirement on 17 or more, but you did not on 17 or less. I've taken from your argument today that it doesn't matter, because you impose the same requirement irrespective of size. And so tell us why you were concentrating on 17 if it did not mean the imposition of a CO requirement for 17 or more, because the ones under 16 and under go through the reasonable accommodation process. Tell us. I must say that I'm particularly interested in hearing the answers to the questions that both Judge Agee and Judge Keenan have posed to you, that their request would be immensely helpful to me as well. And this appeal is simply not at the level of clarity at the end of the briefs and the oral argument that it needs to be. It is not in a position to be informatively decided. And I just want to make sure I understand, you're referring to our cross-appeal. I'm referring to the supplemental submissions that I want, and I want, you know, you've been asked three things, okay? The first thing I want is within seven days. You can go to ten pages if you want. I don't know. And I want the other folks to be able to respond. We'll give them seven days afterwards to respond so that you'll both have your input. We want a description of how this works with respect to the family dwelling rules and with respect to the reasonable accommodations and with respect to when the conditional ordinance is applicable and when it's not. I'm very interested in Judge Keenan's question about the relevance of the 17-day, of the 17 persons requirement. I'm also quite interested in Judge Agee's point about what exactly is before us. But this appeal is in way too confusing a state at this point after briefing and argument, and we need this additional help from counsel, okay? If I could say one risky thing. Yes, I want to know of that description of what you think your cross-appeal is about, but also what you think the direct appeal is about. And counsel can respond, yeah, I agree, or no, I disagree. But I don't want anybody arguing cases in it or things of that nature. We might get to that a little bit later. And as far as I'm concerned, if the two of you can agree on this is the factual recitation of how the process works, that's fine. But that's going to be up to you all. We're not expecting a big fight over this is how the process works. If we get it, we get it, but hopefully not. All right, there you have it. You have seven days to give us that supplemental submission, and you, sir, will have seven days to respond to that, okay? All right, and you've got some time for rebuttal. Thank you. Thank you. I may not be quite sure what you want to reply to. I'm not sure I am. Mr. Anderson? Let me just make two points and I'll be done. The first is answering your question. For the larger facilities, it's fairly straightforward. The smaller ones are more complicated. If you want to locate a facility over 16 and you meet that four-person kitchen bathroom rule, you go through as of right. There's no CO process. If you can't meet it and you're a residential treatment facility, you're thrust into the CO process and the community approval. All right, well, you've set all that down, okay? I will. And that's really all there is to it. And I think we can agree on the process. Well, I hope so. It's a complicated case. You know, as I say, I'm sometimes a little slow, and it may be the reason that I'm asking for this is because of that, but I do want it. And the second thing I wanted to mention, and, Judge Keene, if I could just respond briefly to your concern about the number of felons in the programs. It does occur to me that this is the city of Baltimore, and there are plenty of areas in the city where I suspect there are people who have served their time, they're on probation, living in apartment buildings all over the city, but the city doesn't go to those apartment buildings and say, we want to put you in front of the community to get approval for those folks to live there. It's the differential treatment of these programs that is bothering us and why we brought the case. If that helps. I just thought that might be a useful perspective. This multifamily dwelling thing, to me, destroys the use of the community correctional facility as a comparator. Because if it's true you can locate, as of right, 100 people, as long as you meet the four-person requirement, they're really not worried about this being a community correction facility or causing trouble. It pushes us back to the residents as the proper comparator. And I agree with you. When this case started, I thought we were going to have trouble with the comparator. All right. Will you understand what we're looking for? I do. And I'm not making any argument in this submission. It's only going to be about the process. And that's what we want to cover. All right. Well, that's good. Thank you. We want to be sure that you all are telling us, this is what we think is precisely on the cross-appeal. This is what we think is precisely on the direct appeal. Thank you. Okay. Do you have anything further? Mr. Nagle, you've reserved some time here, but I think you know what we really need. I do. I do want to mention that the provision in the amended code with regard to reasonable accommodation simply states that the zoning administrator has the authority to grant reasonable accommodations in accordance with federal law. It is not limited in any other way by number or otherwise. And I'd also like to point out that there are no cases cited, nor am I aware of any, that suggest that nursing homes are not lawfully subject to a conditional ordinance-type process. The cases cited by the appellant simply were about a discriminatory application of such a process. They did not suggest that because the FHA applies to nursing homes that you couldn't have a public process for deciding them, nor is there any case suggesting that for the types of facilities we have in this case. The last thing I'd like to mention is that Stanley Fine, a lawyer acknowledged by both briefs as well-established in Baltimore City, representing Hopkins with regard to land development, testified fairly clearly and cited in the briefs as to the generality of the conditional ordinance process and the community involvement in virtually every project, even those that are permitted by right, and that there's nothing unique about it where the drug treatment facilities are singled out. And lastly, I just want to mention that the case cited by the plaintiff's plea, supporting the idea that an unwritten policy can be used to assert a facial challenge, actually stands for the proposition that unwritten practices, such as the city's practices in this case of re-granting accommodations and interpreting the statute lawfully, can only be used to defend against a facial attack. They cannot be used to establish a facial attack. Those are my points. I understand we will get you the... When you submit your supplemental authority, make sure that you include relevant references to the particular zoning provisions, okay? Yes. All right, thank you. We will adjourn court and come down and greet counsel.
judges: J. Harvie Wilkinson III, G. Steven Agee, Barbara Milano Keenan